## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| MAPLEBEAR INC., DBA INSTACART, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-2, CONTROLLING AND OPERATING A MALICIOUS APPLICATION KNOWN AS SHOPPER HELPER, <br><br> Defendants. | Civil Action No: 1:21-cv-474 |

## <u>COMPLAINT</u>

Plaintiff Maplebear Inc., dba Instacart ("Instacart") hereby alleges that John Does 1-2 (collectively "Defendants") are engaged in an illegal operation to circumvent Instacart's Shopper Application order batching process and misuse Instacart's intellectual property through a mobile application known as "Shopper Helper." Shopper Helper is marketed to Instacart's independent contractors who shop for and deliver groceries and other retail items to Instacart's customers ("Shoppers"). Shopper Helper is designed to illegally access Instacart's Shopper Application ("Shopper App"), interacting with and using without authorization Instacart's software and recognizable trademarks, and other information taken from Instacart—all while falsely representing to its users and the world that these materials are licensed or owned by Instacart. Shopper Helper undermines Instacart's process for distributing "batches" of order to Shoppers, systematically disrupting Instacart's algorithms for the batching process, and rendering batches unavailable to genuine users. Shopper Helper has and will continue its harmful actions unless enjoined

and held accountable. Defendants control Shopper Helper through an infrastructure hosted at and operating through Internet domains and Internet Protocol addresses (collectively, "Domains and IP Addresses") set forth in **Appendix A** to this Complaint.

## NATURE OF THE ACTION

1.      This is an action based upon: (1) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114 *et seq.*; (3) False Designation of Origin under the Lanham Act, 15 U.S.C. § 1125(a); (4) Trademark Dilution under the Lanham Act, 15 U.S.C. § 1125(c); (5) Tortious Interference With Contractual Relations; (6) Common Law Trespass to Chattels; (7) Unjust Enrichment; and (8) Conversion. Instacart seeks injunctive and other equitable relief and damages against Defendants, to prevent Defendants from engaging in these violations of law and disabling the Shopper Helper app. Defendants, through their illegal activities involving Shopper Helper have caused and continue to cause irreparable injury to Instacart, its Shoppers and members of the public.

## PARTIES

2.      Plaintiff Instacart is a corporation duly organized and existing under the laws of the state of Delaware, having its headquarters and principal place of business in San Francisco, California.

3.      Defendant John Doe 1 controls the Shopper Helper app in furtherance of conduct designed to cause harm to Instacart, its Shoppers, and the public. Instacart is informed and believes and thereupon alleges that John Doe 1 can likely be contacted directly or through third-parties using the information set forth in **Appendix A**.

4.      Defendant John Doe 2 controls the Shopper Helper app in furtherance of conduct designed to cause harm to Instacart, its Shoppers, and the public. The identity and location of this

defendant is currently uncertain. Instacart is informed and believes and thereupon alleges that John Doe 2 can likely be contacted directly or through third-parties using the information set forth in **Appendix A**.

5. Third parties VeriSign, Inc., VeriSign Information Services, Inc., and VeriSign Global Registry Services (collectively, "VeriSign") are the domain name registries that oversee the registration of all domain names ending in ".com" and are located at 12061 Bluemont Way, Reston, Virginia 20190.

6. Third parties Minds and Machines, LLC and Minds + Machines Group Ltd (collectively, "Minds and Machines") are the domain name registries that oversee the registration of all domain names ending in ".vip" and are located at 3100 Donald Douglas Loop North Hanger 7, Santa Monica, CA 90405 and 2505 Second Avenue, Suite 520, Seattle, WA 98121.

7. Third party The Constant Company, LLC (referred to as "Choopa" or "Vultr") is the hosting provider that provides hosting services, including virtual private servers, for the IP address "167.179.75.11" and is located at 100 Matawan Rd, Matawan, NJ 07747 and 319 Clematis St., Suite 900, West Palm Beach, FL 33401.

8. Third party Shopify, Inc. ("Shopify") is a platform that oversees e-commerce accounts and is located at 33 New Montgomery St., Suite 750, San Francisco, CA 94105 and 1209 Orange St., Wilmington, DE 19808.

9. Defendants own, operate, control, and maintain Shopper Helper through infrastructure hosted at and/or operating at the Domains, IP Address, and account with an e-commerce platform set forth in **Appendix A**. The infrastructure hosted and operated at the Domains, IP Address, and e-commerce account are maintained by the third-party hosting companies set forth at **Appendix A**. Instacart will amend this complaint to allege the Doe

Defendants' true names and capacities when ascertained. Instacart will exercise due diligence to determine Doe Defendants' true names, capacities, and contact information, and to effect service upon those Doe Defendants.

10.     Instacart is informed and believe and thereupon allege that each of the fictitiously named Doe Defendants is responsible in some manner for the occurrences herein alleged, and that the injuries of Instacart, its Shoppers and members of the public, as herein alleged, were proximately caused by such Defendants.

11.     On information and belief, the actions and omissions alleged herein to have been undertaken by John Does 1-2 were actions that Defendants, and each of them, authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions and omissions each Defendant assisted, participated in, or otherwise encouraged, and are actions for which each Defendant is liable. Each Defendant aided and abetted the actions of Defendants set forth below, in that each Defendant had knowledge of those actions and omissions, aided and benefited from those actions and omissions, in whole or in part. Each Defendant was the agent of the other Defendant, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of the other Defendant.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises out of Defendants' violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), and the Lanham Act (15 U.S.C. §§ 1114, 1125).  The Court also has subject matter jurisdiction over Instacart's claims for trespass to chattels, conversion, tortious interference with contractual relations and unjust enrichment pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to Instacart's claims has occurred in this judicial district, because a substantial part of the property that is the subject of Instacart's claims is situated in this judicial district, and because a substantial part of the harm caused by Defendants has occurred in this judicial district. Defendants engage in conduct availing themselves of the privilege of conducting business in Virginia, and utilize instrumentalities located in Virginia and the Eastern District of Virginia to carry out acts alleged herein.

14.     Instacart uses Amazon Web Services ("AWS") to store and compute data that powers its Platform, including its Shopper Application. Instacart's AWS servers are located in the Eastern District of Virginia.

15.     Defendants have affirmatively directed action at Virginia and the Eastern District of Virginia by directing their activities at Instacart's servers which are located in the Eastern District of Virginia. Instacart's Platform, and the associated data and intellectual property, is stored within Instacart's AWS infrastructure in the Eastern District of Virginia. Defendants have illegally accessed Instacart's servers in order to obtain Instacart's information regarding "batches" of orders available to Shoppers without authorization. Defendants also distribute, copy, and reproduce Instacart's intellectual property without authorization, which is stored on Instacart's AWS servers in the Eastern District of Virginia.

16.     Defendants maintain Internet infrastructure registered through VeriSign, which resides in the Eastern District of Virginia. Defendants use this domain to offer an illegal instrumentality in this judicial district. Defendants have undertaken the acts alleged herein with knowledge that such acts would cause harm through domains located in the Eastern District of Virginia, thereby injuring Instacart, its Shoppers, and others in the Eastern District of Virginia and elsewhere in the United States. Therefore, this Court has personal jurisdiction over

Defendants.

17.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this judicial district. A substantial part of the events or omissions giving rise to Instacart's claims, together with a substantial part of the property that is the subject of Instacart's claims, are situated in this judicial district. Venue is proper in this judicial district under 28 U.S.C. § 1391(c) because Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND
### Instacart's Services

18.     Instacart, founded in 2012, operates a multi-sided technology and communications platform via the Instacart website and its smartphone applications ("Instacart Platform"). The Instacart Platform facilitates on-demand grocery and retail delivery services by connecting customers who wish to purchase grocery items from Instacart's local retail partners with personal shoppers ("Shoppers") who will shop for and/or deliver the orders.

19.     As a technology company, Instacart devotes its business to developing and maintaining the complex technology and related infrastructure necessary to operate its Platform, including the Shopper App. Instacart has invested substantial resources in developing high-quality software and services. Due to the high quality and effectiveness of the Instacart Platform, Instacart has generated substantial goodwill with its customers, Shoppers, and the public, establishing a strong brand and developing the Instacart name and the names of its Platform and services into strong and famous symbols that are well-recognized within its channels of trade. Instacart has registered trademarks representing the quality of its products and services and its brands, including Instacart® and the Instacart Carrot®. Copies of the registrations for these trademarks are attached as **Appendix B** to this Complaint.

20.     Instacart is not a retailer and does not own or resell any goods. The company does

not perform the actual transportation and delivery of the goods purchased through its Platform to customers. The Instacart Platform connects orders placed by customers with independent service providers, Shoppers, with whom Instacart contracts.

21.     In the United States, Instacart's service is available in all 50 states and the District of Columbia.

22.     For customers, the Instacart Platform offers on-demand shopping from numerous retailers through a single smartphone app or website and facilitates delivery of the goods directly to their doorstep.

23.     For Shoppers, Instacart provides a separate mobile application known as the Shopper App. The Shopper App is available through Google Play or the Apple App Store.

24.     The Shopper App is the primary way that Shoppers interact with Instacart. The Shopper App provides a matching function using proprietary technology to offer "batches" of customer orders to Shoppers. Shoppers, who use the Shopper App to indicate their availability to receive and accept orders at their discretion, enter into written agreements to perform services as independent contractors.

25.     Orders are offered to Shoppers in "batches" consisting of one or more customer orders to be shopped and delivered together. Instacart's algorithms take into account numerous factors promoting efficiency and fairness when offering available batches to Shoppers. Shoppers can view a list of available batches and accept or decline those batches based on criteria such as the size of the orders, batch payment amount, and the location of the retailer of the goods.

26.     Instacart does not sell ownership rights, copyright or other intellectual property rights to its Shopper App. Instead, Instacart's Shoppers must obtain a license, which grants Shoppers limited rights to install the Shopper App and to access and use the Shopper App,

including accessing and viewing batches of orders, subject to Instacart's technical security measures. This enables Instacart to maintain control over the functionality and usage of the Shopper App and prevent malicious actors from exploiting the Shopper App in a harmful way. Any member of the public who creates a Shopper account to use the Shopper App must accept Instacart's Shopper Application Terms and Conditions ("Shopper App Terms"). A copy of the current Shopper App Terms is attached as **Appendix C** to this Complaint.

27.     The Shopper App Terms make clear to Shoppers that they are acquiring a license to use the Shopper App subject to certain limitations around the use of and distribution of the application. For example, the Shopper App Terms prohibit Shoppers from making any automated uses of the Shopper App or the Instacart Platform. Shoppers also may not attempt to decompile, reverse engineer, disassemble, hack, defeat, or overcome any of Instacart's software, encryption technologies, or security measures or data transmitted, processed or stored by Instacart.

28.     The Shopper App Terms explicitly state that Instacart owns all trademarks, copyrights, database rights, patents, and other intellectual property rights of any nature in the Shopper App, together with the underlying software code.

29.     Instacart works hard to protect the integrity and security of its network and systems. Among other things, it employs an array of technological safeguards and barriers designed to prevent data scrapers, bots, and other automated systems from accessing and copying its data on a large scale.

30.     Instacart's servers and information contained in the Shopper App (e.g., batches of orders) are not open to the general public. Rather, each call to Instacart's servers requires Instacart to authorize and permit the Shopper seeking to access Instacart's servers to view available batches on the Shopper App. This is because Instacart's servers are protected by

8

sophisticated defenses designed to prevent unauthorized access and abuse, and which evaluate whether to grant each request made to Instacart's servers.

## OVERVIEW OF SHOPPER HELPER

31.     Shopper Helper is an unauthorized third-party mobile application that runs on top of Instacart's legitimate Shopper App. Shopper Helper adds additional, unauthorized functionality to Instacart's Shopper App, which includes automatically filtering and selecting the 'best batch' for a user, bypassing the designed Instacart native batch selection and offering process. Shopper Helper includes, for example, technology that unfairly leverages filters, such as the geographic proximity of the grocery store, delivery distance, and earning potential, and automatically accepts orders in a manner that may prevent Shoppers using the legitimate Shopper App from accepting such orders. Defendants have recently marketed Shopper Helper app on social media, shown in **Figure 1** below, as "the best tool to get high paying batches."



**Figure 1**

32.     Upon information and belief, Defendants offer Shopper Helper to the public through a subscription service. For example, and upon information and belief, a license to Shopper Helper can be obtained for various subscription durations with associated costs. The

cost for a three-day subscription is approximately $89, while the cost for a 15-day subscription is approximately $249. The following **Figures 2 and 3** show the subscription pricing and an email from Defendants offering a three-day license to Shopper Helper.



**Figure 2**



**Figure 3**

33.    Upon information and belief, Defendants communicate with the public through email addresses associated with Chinese Internet technology company, NetEase. Defendants further use Telegram and WhatsApp to further communicate about Shopper Helper.

34.     Defendants use Coinbase infrastructure to accept cryptocurrency payment for the subscription, as shown below in **Figure 4**.



**Figure 4**

35.     Defendants make the Shopper Helper app available through infrastructure comprised of Internet domains, an IP address, and an associated account within an e-commerce platform, reflected in **Appendix A**. Such domains include "shopper-helper[.]com," "shopperhelper[.]vip," and "ssqian[.]vip." An IP address can be thought of as the location on the Internet of a particular computer. An "IP address" is a unique string of numbers separated by a period, such as "149.111.151.161" that identifies each computer attached to the Internet. Defendants must lease such computers from companies that provide "hosting" services, and which assign to those computers particular IP addresses. The hosting company refers to a type of company that specializes in offering computer hardware and software connection to the Internet, technical support, and other services to companies and individuals seeking to have some presence on the Internet. Defendants also leverage an account on the e-commerce platform Shopify to support distribution of the fraudulent Shopper Helper app.

36.   Once installed on a mobile device, Shopper Helper's instructions require users to remove Instacart's legitimate Shopper App. The following **Figure 5** shows Shopper Helper's installation guide, which is hosted on the domain "shopperhelper[.]vip."



**Figure 5**

37.   The Shopper Helper app arrives on the user's device with an Apple Certification. An Apple Certification is used to integrate applications into the mobile operating system. In effect, before an app can be installed on a device, it must be "signed" with a certificate issued by Apple that contains information about the developer. The purpose of the Apple Certificate is to authenticate the developer – i.e., state that the developer of the mobile application is a trusted developer. Applications that do not contain an Apple Certificate cannot install on an authorized and unadulterated Apple mobile device. Shopper Helper has taken steps to obtain multiple Apple Certificates in order to obfuscate the true developer and to circumvent the normal authentication protocols that Instacart has in place.

38.     Shopper Helper then requires users to enter their Instacart Shopper App credentials. At that point, Shopper Helper will transmit information through the Internet to call Instacart's AWS servers, in order to obtain batch information. Because Shopper Helper leverages authentic Instacart credentials, which it has intercepted without authorization, Shopper Helper is able to fraudulently circumvent Instacart's technical measures that control access to Instacart's AWS servers and intellectual property.

39.     Shopper Helper prompts users to set criteria for batches they will accept, including the dollar amount of the order, distance from the shopper, and distance to the delivery destination. The Shopper Helper app will then use those rules to automatically accept any available batches that match the criteria. This means that users of the Shopper Helper app are automatically assigned batches within seconds of them becoming available through Instacart, often before Shoppers using the legitimate Instacart Shopper App have the opportunity to view them. The following **Figure 6** shows the criteria Shopper Helper makes available.



**Figure 6**

40.     By automating batch selection and choosing batches of the highest dollar value, Shopper Helper is disrupting Instacart's batching process and its relationships with Shoppers.

41.     Shopper Helper utilizes a capability called patching, which enables software developers to add components and functionality to existing binary code. Through patching, Defendants were able to create Shopper Helper, which essentially replicates Instacart's Shopper App functionalities and user interface. In effect, Shopper Helper's technical architectural and utilization of patching tools enables Shopper Helper to act and appear virtually identical to the Shopper App, as shown in **Figures 7** and **8.**




**Figure 7** – Instacart's Shopper Application     **Figure 8** – Shopper Helper

42.     As can be seen, Shopper Helper appears to the public to be identical to Instacart's

Shopper App because it uses Instacart's trademarks, content and protected user interfaces, but it

is instead a fraudulent, counterfeit and adulterated version of Instacart's Shopper App.

Defendants are trading on Instacart's trademarks to deceive users of Instacart's Shopper App and

the public, to trade on the legitimacy of Instacart's brand. Trademark registrations for the marks

infringed by Defendants are attached to Instacart's Complaint as **Exhibit B**.  For example,

Instacart's Shoppers who do not use Shopper Helper wrongly perceive Instacart as approving,

endorsing or having some association with the use of the Shopper Helper app.

43.     Masquerading as Instacart's genuine Shopper App, Defendants have added

unauthorized functionalities to the Shopper App's binary code, including additional filtering

criteria and the automated selection functionality. This means that Shopper Helper acts virtually

the same as the Shopper App – i.e., allowing users to view batch orders, change their user

profile, and access messages – but further includes the feature enabling Shopper Helper to

automatically select certain orders.

44.     To continue its fraudulent activities, Shopper Helper leverages several web calls to an application programming interface ("API") known as "LetsValidate" that enables Shopper Helper to validate that the application is still allowed to operate and access batch information from Instacart's Shopper App without forcing the user to reauthenticate. This API call further enables Shopper Helper to regularly update the user's selection criteria for purposes of automatically selecting certain batches. Shopper Helper stores this "LetsValidate" API on the domain "ssqian[.]vip." The following **Figure 9** shows how the Shopper Helper application makes a web call to "ssqian[.]vip" to validate that the application is still allowed to operate.



**Figure 9**

45.     Shopper Helper accesses Instacart's AWS servers without authorization to obtain batch information on several representative occasions:

a.  Each time Shopper Helper transmits Instacart's credentials for authentication purposes;

b.  Each time Shopper Helper requests batch information from Instacart's AWS servers;

c.  Each time Instacart's AWS servers transmit batch information back to the Shopper Helper user's mobile device; and

d.  Once Shopper Helper identifies a batch that satisfies the user's criteria, Shopper

16

Helper will transmit that information to Instacart's AWS servers to claim that batch as taken and thus remove it from Instacart's legitimate Shopper App.

## HARM TO INSTACART, THEIR
## SHOPPERS, AND THE PUBLIC

46.     Defendants' misuse of Instacart's software disrupts the distribution of batches among Shoppers, undermining confidence in the fairness of Instacart's Platform. Shopper Helper seeks to give its users an unfair advantage that harms legitimate Instacart Shoppers. The Shopper Helper app can cause Shoppers using the legitimate Shopper App to miss out on opportunities for batches that would otherwise be available to them. This causes dissatisfaction with Instacart's Shopper App and services and diminishes Shopper confidence in Instacart's Platform.

47.     Shopper Helper inflicts substantial damage on Instacart whose products and trademarks Defendants systematically misuse as part of Shopper Helper's operations. For example, once Shopper Helper is installed on a user's mobile device, it compromises the underlying code of Instacart's Shopper App through the creation and operation of a counterfeit, adulterated version of the Shopper App. However, the compromised Shopper App does not appear any different to the user on the mobile device. Anyone viewing the Shopper Helper app, thus, would think that Shopper Helper is developed and distributed by Instacart, despite the fact that it is the operators of Shopper Helper that are compromising the Shopper App. This harms Instacart's reputation and goodwill among the public, and particularly among Shoppers who may incorrectly believe that Shopper Helper is sanctioned, sponsored, or associated in some manner with Instacart.

48.     Once downloaded, Shopper Helper makes an application programming interface ("API") wrapper call (a technical "hand-shake") to Instacart's infrastructure. An API wrapper is a tool designed to automate calling of certain functionalities from an underlying codebase. In this instance, Shopper Helper's API wrap is designed to access Instacart's infrastructure to obtain

17

batch information by appearing as the genuine Shopper App, which enables Shopper Helper to obtain information regarding batch orders directly from Instacart's infrastructure. In addition, once Shopper Helper automatically selects the batch, Shopper Helper will transmit that information to Instacart's AWS servers to claim that batch as taken and thus remove it from Instacart's legitimate Shopper App.

49.     Once Shopper Helper makes the technical handshake with Instacart's infrastructure, Shopper Helper will appear to the Shopper as Instacart's Shopper App with the Shopper Helper enhanced functionality. However, this fraudulent version makes significant changes to Instacart's Shopper App by enabling Shopper Helper to fraudulently access Instacart's servers to obtain batch information, masquerading as the authorized Shopper App and enabling the use of automated filtering and selection of batches, as shown in **Figure 10**.



**Figure 10**

50.     Shopper Helper's fraudulent app harms Instacart's Shopper App's functionalities by interfering with the batch selection process. For example, Shopper Helper's users can configure Shopper Helper to crawl Instacart's batch end points and automatically select the batches of the highest dollar value. By automatically selecting batches, Shopper Helper is making unauthorized changes to Instacart's Shopper App by systematically disrupting Instacart's algorithms for the batching process, rendering batches unavailable to genuine users.

51.     Each time Shopper Helper is launched, it accesses Instacart's Shopper App and misuses code, features and functionality of the Shopper App. The software and services that support Instacart's Shopper App are located on AWS infrastructure. Because Shopper Helper contains and misuses code, features and functionality of Instacart's Shopper App, it is also accessing without authorization Instacart's AWS servers, which are physical computers located

in Northern Virginia.

52.     Shopper Helper harms Instacart and Instacart's Shoppers by damaging Instacart's proprietary Shopper App installed on Shoppers' mobile devices. In fact, if the mobile device contains an instance of Instacart's Shopper App, Shopper Helper will instruct the user to remove Instacart's authentic application from the device.

53.     Shopper Helper's harm begins when it is downloaded onto the mobile device. Upon installation, Shopper Helper will make certain technical calls to the Instacart Shopper App to begin accessing Instacart's Shopper App and servers. Shopper Helper will then run scripts to automatically select batches of orders from Instacart's Shopper App at the expense of Instacart's Shoppers who do not have access to Shopper Helper.

54.     Instacart devotes significant computing and human resources to combating bots like Shopper Helper. Instacart, as a provider of the Instacart Shopper App, as well as other products, must also incorporate security features in an attempt to stop installation of Shopper Helper and other bots.  Instacart has expended significant resources to investigate and track the Shopper Helper Defendants' illegal activities and to counter and remediate the damage caused by Shopper Helper to Instacart, its Shoppers, and the general public.

55.     Shopper Helper irreparably harms Instacart by damaging its reputation, brands, and Shopper goodwill.  Defendants physically alter Instacart's Shopper App.

56.     In effect, once altered and controlled by Shopper Helper, the Instacart Shopper App ceases to operate normally and become tools for Defendants to conduct their unauthorized access to batch information on Instacart's servers and automated processes.  Yet, they still bear Instacart's trademarks. This misleads Instacart's Shoppers and the public generally into wrongly believing that Instacart condones, facilitates or somehow is associated with Shopper Helper.

57.     Instacart has invested substantial resources in developing high-quality products and services. Due to the high quality and effectiveness of Instacart's products and services and the expenditures of significant resources by Instacart to market those products and services, Instacart has generated substantial goodwill with its Shoppers, has established strong brands, and has developed the Instacart name and the names of its products and services into strong and famous world-wide symbols that are well-recognized within its channels of trade.  Instacart has registered trademarks representing the quality of its products and services and its brand, including Instacart®.

58.     The activities of Shopper Helper injure Instacart and its reputation, brand, and goodwill because Shoppers subject to the negative effects of this unauthorized application incorrectly believe that Instacart and Instacart's Shopper App are the sources of their inability to obtain certain batches that otherwise may be available.  There is a great risk that users may attribute the imbalance and their inability to obtain certain orders to Instacart and associate these problems with Instacart's products, thereby diluting and tarnishing the value of the Instacart trademarks and brands.

### **FIRST CLAIM FOR RELIEF**
### **Violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030**

59.     Instacart incorporates by reference each and every allegation set forth in paragraphs 1 through 58 above.

60.     Defendants knowingly and intentionally accessed and continue to access protected computers without authorization and knowingly caused the transmission of a program, information, code and commands, resulting in damage to the protected computers, the software residing thereon, and Instacart.

61.     Defendants' conduct involved interstate and/or foreign communications.

62.     Defendants' conduct has caused a loss to Instacart during a one-year period aggregating at least $5,000.

63.     Instacart seeks injunctive relief and compensatory and punitive damages under 18 U.S.C. §1030(g) in an amount to be proven at trial.

64.     As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

**SECOND CLAIM FOR RELIEF**

**Trademark Infringement Under the Lanham Act – 15 U.S.C. § 1114 *et seq.***

65.     Instacart incorporates by reference each and every allegation set forth in paragraphs 1 through 63 above.

66.     Defendants have used without authorization Instacart's trademarks in interstate commerce.

67.     As a result of their wrongful conduct, Defendants are liable to Instacart for violation of the Lanham Act.

68.     Instacart seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

69.     As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

70.     Defendants' wrongful and unauthorized use of Instacart's trademarks to promote, market, or sell products and services constitutes trademark infringement pursuant to 15 U.S.C. § 1114 *et seq.*

**THIRD CLAIM FOR RELIEF**

**False Designation of Origin Under the Lanham Act – 15 U.S.C. § 1125(a)**

71.     Instacart incorporates by reference each and every allegation set forth in paragraphs 1 through 69 above.

72.     Instacart's trademarks are distinctive marks that are associated with Instacart and exclusively identify its businesses, products, and services,

73.     Defendants make unauthorized use of Instacart's trademarks. By doing so, Defendants mislead Instacart's Shoppers and the public generally into wrongly believing Instacart condones, facilitates or somehow is associated with Shopper Helper.

74.     As a result of their wrongful conduct, Defendants are liable to Instacart for violation of the Lanham Act, 15 U.S.C. § 1125(a).

75.     Instacart seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

76.     As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

**FOURTH CLAIM FOR RELIEF**

**Trademark Dilution Under the Lanham Act – 15 U.S.C. § 1125(c)**

77.     Instacart incorporates by reference each and every allegation set forth in paragraphs 1 through 76 above.

78.     Instacart's trademarks are famous marks that are associated with Instacart and exclusively identify its business, products, and services.

79.     Defendants make unauthorized use of Instacart's trademarks. By doing so, Defendants are likely to cause dilution by tarnishment of Instacart's trademarks.

80.     Instacart seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

81.     As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## FIFTH CLAIM FOR RELIEF
### Intentional Interference with Contractual Relationships

82.     Instacart incorporates by reference each and every allegation set forth in paragraphs 1 through 81 above.

83.     Instacart has valid and subsisting contractual relationships with licensees of its Shopper App.

84.     Upon information and belief, Defendants are aware of Instacart's contracts because every Shopper who has recently obtained authentic credentials through the Shopper App must have accepted the Shopper App Terms.

85.     Shopper Helper is designed and intended to cause Shoppers to breach their Terms and Conditions with Instacart by inducing users to modify the Shopper App, to make unauthorized uses of the Shopper App, to overcome Instacart's technical counter-measures, and to redistribute the Shopper App to Defendants.

86.     Upon information and belief, Defendants' conduct did cause users of the Shopper Helper app to breach their Terms and Conditions with Instacart.

87.     Upon information and belief, Defendants know that their conduct is intended to and likely to interfere with the Shopper App Terms and deprive Instacart of the attendant economic benefits.

88.     Defendants' conduct has caused Instacart economic harm.  Instacart seeks

injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

89.     As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## SIXTH CLAIM FOR RELIEF
### Common Law Trespass to Chattels

90.     Instacart incorporates by reference each and every allegation set forth in paragraphs 1 through 89 above.

91.     Defendants have used a computer and/or computer network, without authority, with the intent to cause physical injury to the property of another.

92.     Defendants have, without authority, used a computer and/or computer network, with the intent to trespass on the computers and computer networks of Instacart.

93.     Defendants' actions in operating Shopper Helper result in unauthorized access to Instacart's software and the computers on which Instacart's programs and services run, and result in unauthorized intrusion into those computers.

94.     Defendants intentionally caused this conduct, and this conduct was unlawful and unauthorized.

95.     Defendants' actions have caused injury to Instacart and have interfered with the possessory interests of Instacart over its software.

96.     Instacart seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

97.     As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment

98.     Instacart incorporates by reference each and every allegation set forth in paragraphs 1 through 97 above.

99.     The acts of Defendants complained of herein constitute unjust enrichment of the Defendants at the expense of Instacart in violation of the common law. Defendants used, without authorization or license, software and other intellectual property belonging to Instacart to facilitate unlawful conduct inuring to the benefit of Defendants. In this manner, Instacart conferred a benefit on the Defendants.

100.    Defendants retained the benefit of and profited unjustly from their unauthorized and unlicensed use of Instacart's intellectual property.

101.    Upon information and belief, Defendants had an appreciation and knowledge of the benefit they derived from their unauthorized and unlicensed use of Instacart's intellectual property.

102.    Retention by the Defendants of the benefit and profits they derived from their malfeasance would be inequitable and unjust.

103.    Instacart seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

104.    As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

## EIGHTH CLAIM FOR RELIEF
### Conversion

105.    Instacart incorporates by reference each and every allegation set forth in

paragraphs 1 through 104 above.

106.    Instacart owns all right, title, and interest in the Shopper App. Instacart licenses the Shopper App to Shoppers for limited use. Defendants have interfered with, unlawfully and without authorization, and disposed Instacart of, control over the Shopper App.

107.    Defendants have, without authority, used a computer and/or computer network, with the intent to remove, halt, or otherwise disable computer data, computer programs, and or computer software from a computer or computer network.

108.    Instacart seeks injunctive relief and compensatory and punitive damages in an amount to be proven at trial.

109.    As a direct result of Defendants' actions, Instacart has suffered and continues to suffer irreparable harm for which they have no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

### PRAYER FOR RELIEF

WHEREFORE, Instacart prays that the Court:

1.    Enter judgment in favor of Instacart and against the Defendants.

2.    Declare that Defendants' conduct has been willful and that Defendants have acted with fraud, malice, and oppression,

3.    Enter a preliminary and permanent injunction enjoining Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and all persons and entities in active concert or participation with them, from engaging in any of the activity complained of herein or from causing any of the injury complained of herein and from assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activity complained of herein or from causing any of the injury complained of herein.

4.      Enter a preliminary and permanent injunction giving Instacart control over the domains used by Defendants to cause injury and enjoining Defendants from using such instrumentalities.

5.      Enter judgment awarding Instacart actual damages from Defendants adequate to compensate Instacart for Defendants' activity complained of herein and for any injury complained of herein, including, but not limited to interest and costs, in an amount to be proven at trial.

6.      Enter judgment disgorging Defendants' profits.

7.      Enter judgment awarding enhanced, exemplary and special damages, in an amount to be proven at trial.

8.      Enter judgment awarding attorneys' fees and costs, and order such other relief that the Court deems just and reasonable.

## <u>DEMAND FOR JURY TRIAL</u>

Instacart respectfully requests a trial by jury on all issues so triable in accordance with Fed. R. Civ. P. 38.

Dated: April 16, 2021                    Respectfully submitted,

Julia Milewski (VA Bar No. 82426)
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington DC 20004-2595
Telephone:  (202) 624-2500
Fax:        (202) 628-5116
jmilewski@crowell.com

Gabriel M. Ramsey (*pro hac vice pending*)
Warrington S. Parker III (*pro hac vice pending*)
Kayvan Ghaffari (*pro hac vice pending*)

Diane Aguirre-Dominguez (*pro hac vice pending*)
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone:  (415) 986-2800
Fax:            (415) 986-2827
gramsey@crowell.com
wparker@crowell.com
kghaffari@crowell.com
daguirre-Dominguez@crowell.com

*Attorneys for Plaintiff Maplebear Inc., dba Instacart*